Case number 25-1064 et al. PJM Transmission Owners et al. Petitioners v. Federal Energy Regulatory Commission. Mr. Longstreth for the petitioners, Ms. Galliford for the respondent, and Mr. McCaffrey for the respondent intervener. Good morning, counsel. Good morning, Mr. Longstreth. Please proceed when you're ready. Thank you. May it please the court. The transmission operator petitioners own almost all of the electric transmission assets in the integrated electrical grid operated and planned by PJM. PJM has defined operational and planning responsibilities for the grid because the transmission owners have voluntarily transferred those to them in an agreement known as the Consolidated Transmission Operators Agreement. The agreement was negotiated bilaterally between the transmission owners on one side and PJM on the other side and entered into in 2006. The fault line in the agreement in general terms is that PJM assumes responsibility for rate design and planning for regional projects while the transmission owners retain the obligations for local projects. The agreement was entered into after this court ruled in Atlantic City that FERC could not order the transmission operators to transfer any Section 205 rights. They did not agree to transfer. This court ruled in the American Municipal Power Case three years ago and I'm quoting, PJM's authority to oversee and operate the electrical grid is limited to that granted by the transmission owners in the agreement. After nearly 20 years of experience in which the agreement has not been meaningfully amended, PJM and the TOs determined that amendments to it were needed. They negotiated a package, they presented it to the commission, FERC. The primary provision was to give PJM full authority to file changes to its regional transmission planning rules known as the planning protocol by placing those rules in the PJM tariff rather than in the operating agreement where they now reside. PJM is the only RTO in the country that does not have this tariff authority. The parties negotiated other changes as well, all of which address the fundamental bargain under which the transmission owners transfer and PJM agrees to accept rights and responsibilities for regional planning under the agreement. Can I ask you, counsel, as you just stated, the purpose of this package of amendments was to move the planning protocol from the operating agreement to the tariff. There are three agreements before us, operating agreement, tariff, and then owner's agreement. This was presented first to the members of PJM and now to FERC as a package of three sets of amendments to all three agreements. But what you're doing is moving one provision from the operating agreement to the tariff. What's before us is the owner's agreement amendments. And my question is, why are those owner's agreement amendments necessary when the purpose is to move something among the other two agreements? So that was, I guess, two answers to that question. First of all, that's one issue that FERC actually did not decide in this question. You have to understand that. I'm just trying to understand. We believe that, I'm sorry. You have represented to this court that this is an all or nothing proposition, that you have to have all the amendments to all three agreements or nothing at all. And so I'm just trying to understand why this component of this package is necessary, that you have to amend the owner's agreement when you're moving something among the other two agreements. Because what we are moving is planning authority that we would otherwise have. In other words, the planning authority is PJM's authority because we have given it to them in the agreement. We've transferred planning authority we would otherwise have to PJM. So we've disposed of that planning authority. It was disposed of first to the operating agreement. Now we're disposing of with the agreement of PJM to the PJM, a tariff. In other words, it originated with the transmission owners that you transferred authority. That's exactly right. Why isn't that just water under the bridge? Because now we have a whole different structure where there's five members of PJM, the transmission owners, it's just one of five groups of members. And there's a whole new structure here. So I don't see why you're back to the origination when we have a new structure that you've already consented to. I guess the first question we've already consented to, having consented to it in 2006 does not mean we can't amend it. There's this sort of idea that's been floating around in some of the briefing in the opposition that once we transfer this authority in 2006, it's just gone and we have no ability to revoke that amendment or anything. It's an agreement that we can amend, and we are now amending that agreement to say, rather than put it in the operating agreement, we are putting it in the tariff. But you are seeking to amend an operating agreement that has all these other members as part of it. You cannot achieve what you're trying to do without, I guess, affecting the operating agreement. That's right. That's why PJM filed the section 206 to basically say that the current placement in the operating agreement was unjust and unreasonable, was creating all these discriminatory effects. And we agree with PJM on that. We believe that PJM ought to have that authority again, which was originally our authority, ought to have that authority in its tariff rather than in the members committee agreement. We agree with that. And that was a key portion of the package that we presented to FERC. It was not the only part of the package. We also negotiated other changes to the operating agreement that we felt were necessary based on our experience. And in some cases, unfortunate experiences that had caused a lot of litigation because of uncertainties in the agreement, we felt that that should, those changes should be made as well. And we did present that as a negotiated package, which we negotiated with PJM. And bilaterally, by the way, there's this notion again, that somehow PJM is under the control of the TOs. I mean, those were bilateral negotiations. I was around when they were there. They were back and forth. They were over months. There was pushback. Those PJM is a separate entity. And it is an entity that, as you point out, has the members committee as an important constituency of that. So would it be at least conceptually possible to, if the goal is to move the planning protocol from the operators agreement to the tariff, that's the overarching goal, right? That was one of the goals. Okay. Let's just take that goal in isolation for a second. If that were the only goal, would it be conceptually possible to take the planning protocol with the assent of the members committee out of the operators agreement into the tariff, and then not do anything other than that? Not do anything to the owner's agreement, not do anything other than that to the operator? We believe that it's because authority that was originally ours and that we're the ones that disposed of it. We have to have the owner's agreement. We have to have an agreement as to where it goes now. In other words, we originally were part of the agreement to put it in the owner's agreement. Now that it's been determined by both PJM and we agree with PJ about this, that it would be better for PJM to have that in its tariff. We believe that we need to have an amendment to the owner's agreement to say, our planning authority is now disposed of to the tariff, not disposed of the operator. We do believe that that has to be part of the agreement. Then can we just talk for a second about the owner's agreement amendments? Because that's really what you brought before us now, the owner's agreement amendments. Those as well, as Judge Pan was alluding to, were presented as a package. The idea was, look, here's a series of amendments and we present them as an integrated whole. If there's a problem with some part of it, then the whole thing has to break down because it was a delicately negotiated resolution. As to that, I have one technical question just so we can understand the way all this fits together, which is one part of the owner's agreement amendments that was presented for the commission's approval were these regional transmission expansion, RTEP. Yeah, regional transmission expansion plan. Just called the plan, the plan, the regional plan. The regional plan, right. There were some provisions that were suggested should be amended to effectuate this entire arrangement. As to those, the commission concluded as to those particular provisions, there was a set of three of them, that there wasn't a preservation when there was a rehearing petition filed. Now, I know you dispute whether there was preservation, but let's just assume that you're wrong about that. I know you resist that, but just assume you're wrong about that. Okay. And my question is this, if it wasn't preserved, that part of it wasn't preserved for rehearing. And then the commission said, look, the non-preservation, which they did in a footnote of their rehearing decision, the non-preservation is an independent reason that we reject the owner's amendments. Because again, that presented it as an integrated whole. This is a piece of them. That piece of it wasn't preserved. If that piece of it wasn't preserved, we can't take a second look at what we did with those. We rejected those. And if we have to reject those, then the whole thing has to come down. Does that mean if you didn't preserve that, then case closed for our purposes? Because it seems to me it would, because if you didn't preserve that, that's a piece of it that you're sustaining your challenge. But if it wasn't preserved, we don't have jurisdiction to look at that. And if we don't, then that piece of it at least can't be looked at. And if that piece can't be looked at, then based on the sense that this was presented as an integrated whole, any piece of it falls out, then the entire bench collapses because it's a multi-legged stool. And do you follow what I'm saying? And so is it true that you need to, and you may, I'm not saying you don't win on preservation, but if you don't win on preservation, does that mean that the waiver argument is just bad for lots of reasons? But you've already said, I'm going to say that. So I don't know why I'm saying it again. Yeah, I mean, it's an interesting situation because yes, our position is that it does have, so our position is that the agreements have to be, the agreement has to be looked at as a whole. That's primarily in the context of if you're to be finding the agreement amendments as they're presented unjust and unreasonable, you have to look at them as a whole. You can't just look at them in isolation. And so in our view, just one provision being, even if it was true that this one provision were unjust and unreasonable, and even if it's true that now we can't challenge that, our position is still that you would have to look at the agreement as a whole, the amendments as a whole, you would have to find those amendments as a whole unjust and unreasonable. Now, if you did do that, I agree with that, that if the commission legitimately had found based on proper evidence and real findings opposed to maybe, possibly, potentially, all the things they found, then I think they would. But I think in this particular case, I think the answer is no, because I think, okay, even if you assume that one provision is unjust and unreasonable, if in the context of the entire agreement, that overall agreement is just unreasonable, we think they would still have to adopt it. We think that's what it means. You look at as a whole, just like you look at a rate as a whole, right? There's a whole long history under FERC, when you look at a rate and determine whether a rate is unjust unreasonable, you don't pick out every little element of the rate and say, okay, well, you know, this calculation was wrong, or that calculation was wrong. You look at the rate as a whole and see if the rate as a whole is unjust. That makes it sound like that the commission shouldn't even talk about whether any individual pieces are problematic. They should just have one kind of gestalt overarching perspective on if you balance everything out, does it seem okay? I hope that's not what I'm saying, because that doesn't sound very reasonable. I think what I'm saying is, you look at all the individual circumstances, and you have to look at all the individual provisions, but then you do have to determine, based on analysis of all the provisions, whether it's unreasonable as a whole. I guess that's maybe one way to get into some of the specifics of what we're talking about here, because I think one of the things that's going on here with respect to the argument is that the provisions they picked out as being unreasonable, they strike us as mostly unobjectionable, you know, dispute resolution provisions, the kind of normal things you see in contracts, provisions that planning and withdrawal has to be in the context of the agreement, just recognize the agreement. I think the fact that the things they picked out were so make-weight, were so trivial, that basically we just don't feel in the context of the agreement as a whole, particularly when the transfer is a key part of it, and a lot of people, I mean, even a lot of our opponents agree it's a good idea, that basically in that context where you've got one important thing and then all these very unimportant things. Can I ask you, I'm trying to understand what you think is the procedure we should be following here, and what I've heard you say is we should look at each of the provisions that have been challenged, decide individually what we think of each, and then we should do some kind of a weighing to see if overall this is just unreasonable. I think that's correct. Well, I'm trying to understand like how we're supposed to do that, like we're not experts in electricity law. No, I know. We do our best. I know, but you're not experts in the rate context either, and that's what happens in the rate context. You look at the rate, you look at the elements, but if overall it's a reasonable rate, then you find it's a reasonable rate. But again, what I can do is if that's something... And what do we do with the fact that the thing that I think that you most rely on and what most people think is probably a valid thing to do, which is remove the planning protocol from the operating agreement to the tariff, that can be done without all of these. So it seems to me that your position is we have to look at the package you presented, the way you presented it, which I think is actually the law, but then weigh this one thing that you chose to put in that everybody wants so that you could get in all these other things that you want that everybody doesn't want. That seems like a weird process. Well, and I guess... Let me talk about why we think that fits this category, and maybe that goes back, and this talks about the Hecate case, which is you've got a negotiated deal, and you have the deal as a whole. One of the things that was going on here was, I think, as you point out, Judge Pan, the transfer seemed to be less controversial than some of these other provisions that we had in the agreement. Now, we couldn't understand why those other provisions were controversial. They were pretty ordinary incidences of contracts to us. We couldn't understand why they're controversial. It gives the transmission owners much more authority and sway over the process than they currently have at the expense of all the other members. But it just doesn't. I mean, there's no basis for that. But I think what was very clear, I think, when you're looking at it, and this is actually referred to in the concurrence of one of the commissioners after the initial order, is people were saying exactly as well, people seem to like this transfer. They don't like these other things. So we want a different deal. We want a different deal. We don't like these other provisions. We just want this one deal. We want you to rewrite the deal, basically. And we think that's exactly what was going on here, that rather than looking at what we presented and determining whether it was unjust, unreasonable, the whole process here was designed to drive a different deal, which was the transfer-only deal. And we think that's exactly what Heckbein says you can't do. It's a very similar question to other questions you can get. If you assume for the moment that FERP was right, that the independence-related amendments to the owner's agreement are unjust and unreasonable in isolation. In other words, if you just submitted a proposal to make those amendments, FERP would reject it. I think FERP would say, it sounds like your argument is that by appending that to a larger negotiated deal without, well, this will sound, you can sort of tack on a bad provision and say, sorry, FERP, you've just got to live with it. Because they are constrained to approve or reject the entire package. And I guess, do you have an explanation of why that's not the right framing of what's going on here? Well, I think part of a, I think when you have a negotiation, I think there's some things for some sides and some things for another side. The end result would be that you would receive approval of a provision that FERP thinks is unjust and unreasonable. Okay. And I do understand the idea of, you know, it's all part of a negotiation, but do we have any precedent or does FERP have any precedent of saying we can allow isolated unjust provisions if they are part of an overall beneficial deal? Well, I think I come back to the rate example that I gave before, which is you, you could say in a rate deal, sometimes you could say this provision in isolation might be unjust and unreasonable, but it's part of an overall rate. But what I could do, I guess at this point is shift into I think, even if you don't accept that argument that they have to look at as a whole, FERP was still wrong in terms of how it reviewed these individual, these individual provisions of the agreement. In other words, that- But just to close the loop on Judge Garcia's question, I think the process is you have this negotiated deal. It has a provision in it that's unjust and unreasonable according to some. So they just reject your whole deal. And then you're free to go ahead that doesn't have that involved. Why isn't that the way the process is supposed to work? I mean, if in fact that were the way the court came out, that is what would happen. I think we would have to go back and negotiate it. We'd have to go back and negotiate a new deal. But what I guess I like to do at this point is, is try to get to the argument about why the individual points and others, assuming that I'll go back now, assuming you're correct about that, I'd still like to argue why FERP was incorrect that even looking at these things in isolation outside of the context of the whole deal, FERP was wrong in arguing that these had any effect whatsoever on PJM's independence. There just was not a basis of the record for them to find that, for example, a dispute resolution provision of a kind very similar to one that's already in the agreement for rate filing that at most imposes a 10-day delay on FERP in making a rate filing. That is a normal incident of a complex contract. Why that should be considered an impediment on PJM's independence. PJM itself disagrees. So if we go to this stage of the argument under the decision tree, then for this, you've got to, it's got to be a clean sweep for you, right? That in other words, you have a series of provisions that FERP found problematic. And if we're past the threshold argument, which we are for now, then you've got to win on all of these in order to preserve the deal. If the court takes the position that presented with this, FERP can take any provision of the agreement, no matter how small, no matter how minor in the scheme of things, and find that one provision unjust and unreasonable. If in fact that's where it comes out, yes, I think that is correct. I think we would have to argue that they were wrong on all of them. We think they were pretty clearly wrong at all three of them. I mean, the overall argument was just, I think a lot of that was just, it was just, I think even if you accept, even if you accept your view that they can do it individually, one of the things about the overall argument is I think it just shows why FERP was straining so hard to find problems with agreements, with provisions that are a normal part of an agreement. In other words, because the object here really was to try to force us to present the transfer alone without anything else, I think FERP was really straining without much evidence or support in either the contract or the record to find these specific provisions. Why would they be straining to find weight problems? Because then they have to reject, because if they reject the agreement on that, then we have to present it again as a transfer only, which is what our opponents wanted us to do that. They're actually concerned about these provisions, right? It does seem like they don't have any problem with the main proposal. Well, sorry, let's just get some motivations. Yeah, a more specific question. Well, actually, well, I mean, if I could just answer that too, I think that made, whether FERP could read about that. FERP had a political problem here, and we had a political problem here, which is we had a lot of people lined up on the other side of us. And I think primarily what FERP did here was make a political decision that, well, there was a consensus for a transfer only proposal. Let's get the transmission owners to do only that, and then we won't have this opposition. We'll have something that's relatively clean, and we don't have this opposition to it. And I understand that motivation, but we just don't think the opposition was based on a proper analysis of these provisions. So the provision that you were just starting to talk about, which is section 7.9, it provides that the transmission owners in PJM will make no filing if they contravene certain articles of the owner's agreement. And if the owners think that PJM is about to do that, it can initiate a dispute resolution, which would delay things for 10 days. And so the argument is that that gives the owners undue sway over this process because, for example, PJM might want to submit a filing that would change the planning protocol or change how you're going to expand the grid or whatever. And now just this one group of members, which is the transmission owners, can say, we think that violates the owner's agreement. You need to go to dispute resolution with us and slow everything down by 10 days. And none of the other members have anything like this kind of power. And there's a law that says PJM has to be independent. And so the argument is this provision makes PJM less independent. So you think, no, this doesn't make them less independent. And I don't understand why. Okay. Okay. First of all, I think there's one important thing in your statement, which is no one else has that power now to delay PJM files. The members committee absolutely has the power to veto a filing under 205. That's the whole transfer. They have to vote in a weighted member vote to do things. But now PJM, which is just one member, I mean, I'm sorry, the transmission owners, which is just one set of members, has that right in and of themselves. And so why is that not making PJM less independent? Well, because the basis of that right is our contract. And so there's this view that- But that's the basis for it, but that doesn't mean PJM is not less independent if this goes through. You think it should go through because you think the original authority that you negotiated with PJM, like you didn't negotiate this, but now you can renegotiate it. But I'm just saying the change from what it is now to what you want it to be makes PJM less independent. Okay. PJM's independence does not mean that it can violate our contract. Okay. I mean, PJM has independence, but they do have to respect our contract. And we have a contract with them, and that contract is the basis for PJM's authority to start that. Sorry. You're trying to amend the contract. We're talking about an amendment to the contract. So it's not violating anything right now. You're trying to make an amendment to make it so that you have more authority over the process. Oh, well, no, I didn't suggest that PJM was violating the contract. What I'm saying is that PJM has an obligation to abide by the contract. And the dispute resolution provision, just like a dispute resolution in any contract, is designed to provide a mechanism to assure that the parties are abiding by the contract. Now, they say, well, that's unique and exclusive to the transmission owners, but it's unique and exclusive to the transmission owners because we're the ones with the contract. If other parties have contracts with PJM, they can have dispute resolution provisions in them. That doesn't affect independence. All we're trying to do is say, we have a contract with PJM, and we're putting in an ordinary provision, very, very similar to a approved by FERC, to say there's going to be a dispute resolution provision if we think there's a violation of the contract. PJM has to abide by the contract, whether the dispute resolution provision is in there or not. This is just a way to help resolve dispute, help resolve a dispute if it arises. Now, dispute hasn't arisen in 20 years. I don't know if a dispute is going to in 20 years. FERC's answer to that is, well, it's unjust and unreasonable even if it doesn't happen very often. But again, that gets to the question is, is there a reasonable basis for FERC to say that this provision interferes, gives us control over PJM? In the context, there's just no basis for that. You're talking about an ordinary provision to enforce a contract that hasn't been invoked in 20 years, and all of a sudden, it's whipped up into this improper attempt. Couldn't have been invoked in 20 years because it's new. It's an amendment. No, no, no. There's an existing provision. But that existing provision deals with a different aspect. Yes, it does. So what you're proposing here has never been done before because it's Well, but we also haven't had a dispute with PJM before about whether there's one. Now, we did have a dispute that was resolved by this court in the American Municipal Power case. And one of the issues in that case was filing rights. It turned out that didn't become an issue in that case. But there was a dispute, I guess, over that. But that's one of the things we're talking about that gets into the overlap provisions, which is another issue. One of the issues in that case was whether the agreement addressed the issue or not. We felt the agreement did address the issue. The question was, are there enough synonyms for a place? We had to go through a whole litigation at FERC, a whole litigation at this court, to basically find out whether something that we and PJM agreed was pretty clear in the agreement was clear because there were third parties who wanted to attack it. So that's a perfect example of one of the things that we're trying to fix in this agreement. We went in and put the word in that they claimed wasn't there, right? And so now, that's a perfect example. We've got this experience. We had a dispute over this. We're resolving that dispute. It would be the same thing now, I guess, with a dispute resolution, which is if we have a dispute like this in the future, we think that having a dispute resolution provision like this is going to help resolve that dispute. That's what parties do under contracts. I understand the argument that only the TOs can invoke that, but that's because we're the party to the contract. No other party can invoke it because they're not a party to the contract. So it seems to be odd to say that this is an infringement on independence when all we're trying to do is enforce a contract. We've heard a lot of references to the commission's views. Maybe we'll hear from the commission now if my colleagues don't have additional questions at this point. We'll give them a little time for rebuttal. Ms. Gauff? Morning. May it please the Court. Angela Gauff with the commission. I'd like to start with a line of inquiry from Judge Shereen Bosson, specifically the terms that transmission owners in PJM themselves established for their proposal. Under those terms, as you recognized, if petitioners have forfeited their arguments as to some of these provisions, namely the RTEP planning provisions, this whole house of cards collapses. Their entire proposal must be rejected. Specifically, transmission owners chose to present with PJM their three filings to the commission as inseparable, take it or leave it, and not subject to any modification or condition because it would upend the whole thing. When those are found unlawful, that required rejection of the entire proposal. And consequently, as you've noted, for purposes of judicial review, this Court doesn't need to all of the challenge provisions, and it can confirm the commission's rejection of the proposal if it finds that at least one of these rejections was reasonably made. Now, I also want to... Or not reserved. Or not reserved, exactly. So on that particular question, it just struck me, if you wanted to map out the way you're looking at the case, the most straightforward way to prevail, it would build in a set of assumptions. But I think you could say, well, they've got to run a clean sweep. They've got to went on all the provisions. There's one set of them that weren't even challenged before the commission on rehearing, which is a jurisdictional prerequisite to seeking to have that set aside on judicial review. If it was right, if the commission was right that those weren't even challenged, and therefore, the upshot of which is that we're jurisdictionally barred from looking at it, end of case. But I didn't... I mean, that may be the upshot of what your position is. I didn't see you actually say that in your brief. That's correct. We didn't make this precise standing argument. We framed it only as forfeiture. I know that our... But I'm not even talking about standing, because it's possible to look at a standing. And I know an intervener has made it a standing. But even if you don't look at it as a standing argument, suppose you get past standing, and it's not a redressability issue, it's just on the merits. Even on the merits, if you get past it as a redressability matter, and you look at it on the merits, you would still have the argument that, look, on the merits, there's one set of provisions as to which they just can't be challenged here, because they're just not jurisdiction for you to look at them, because it wasn't preserved below. There wasn't an effort on rehearing to flag this question. So maybe there's redressability in standing. Maybe we get past that bar. But for the merits, that's the end of the case, because this particular set of challenges weren't preserved below. That's one leg of the three-legged stool. The stool collapses. It's over. You don't have to look at the merits of a single thing. And I think that may be the upshot of a lot of what's in your brief, because you do say with a bunch of the provisions, if we win any one of these, then everything collapses. On the preservation one, though, I didn't see you specifically say that if these are non-preserved, then we also win across the board, because that's one of the legs that also collapses, because you don't have to look at the merits of that, because you can't. And if you can't look at the merits of that, then of course we win for the same reasons that we were right on the merits as to some other ones, and therefore we win. You're correct. I don't believe that we framed it in those exact terms. We did say that any of the provisions that the commission rejected on RTO independence grounds would suffice to affirm our decision. And in that section of our brief where we discussed that, we do have discussion of the ARTEC planning provisions, and specifically their forfeiture of their challenge. So in that broader context, I would urge- I didn't say the groundwork, because you made the forfeiture argument. You did. I just didn't have the sentence at the end that said, and I'm not saying this means that you can't rely on it, because I think the groundwork's laid and the rest of your argument sort of feeds into this, but the capstone would have been, and therefore, just based on this basis alone, the case is over. I take your point, Judge. And for future reference, I will endeavor to include that. It's more- it's less a point about what you should and shouldn't say, and more a question about whether in fact that would be- that is your position. That is our position, correct. Yes. I'm asking you about this threshold framing question that we were discussing a lot. So I think if you could view Petitioner's argument as you should just tolerate an unjust provision because there are other good provisions, it's obviously not a very good argument. But that's not really what they're saying, right? Another version of the argument is when it's- when one part of a package seems problematic, you ought to look at other parts of the package that address the same issue. So just in the abstract, if what FERC said was the concern with these specific provisions is they reduce PJM's independence a little bit, and so we're going to reject the entire package. What they're saying is you're ignoring other parts of this proposal that increase PJM's independence a lot, and that's the term of our bargain. If that was the way this was, working same subject, there's almost a linear relationship, wouldn't it be unreasonable to just reject the whole package because one provision reduces PJM's independence a little bit? A couple things, and I promise I'm not trying to fight your hypothetical, but one distinguishing factor here is that- You are. I do just want to say that these are not, you know, just a little bit unreasonable, something like that. It's a fundamental deficiency. It's a violation of our RTO independence regulations. And so this isn't a case where the commission didn't, you know, like a provision quite as much, and perhaps, you know, it's enough to kind of sneak it under. That's not the case. It made the explicit findings that these are unjust and reasonable in violations of our regulations. But to actually address your hypothetical, Judge, what you're suggesting is sort of like a single sliding scale, as if RTO independence is only one measure, and it can only go up or down. But while that context might work, for example, in something like a rate case where we're determining the overall just and reasonableness of a single numerical rate, this is an entirely different context where you have a package of several different independent rules, provisions that are being proposed altogether. They're not all sort of part of the same sliding scale. They're each themselves individual rules that PJM would have to follow and change its procedures according to. They serve different functions. They have different purposes. And so it's not as if we can sort of lump them all into one single balance or sliding scale to determine an overall just and reasonableness of these combined together. And I especially simply saying there's not, it's not like there's an independence score. That's all exactly your concern with these provisions has to do with, yes, it's independence writ large, but it's also the fact that now only the transmission owners have these. So it's more of a slant for bias concern as compared to the other constituencies. That's precisely correct. Just because, you know, there are other provisions that might be just and reasonable or might increase PJM's independence in other ways. It doesn't erase the fact that there are provisions that are unjust and unreasonable and do violate the commission's regulations. I think that's why this whole balancing structure collapses that petitions have proposed. How do you balance the violation of a regulation? I'm not really sure how that would work in practice, but also I do want to point to, you know, our statutory obligations under section 205A of the federal power act. It says all rates and all rules and regulations pertaining to such rates shall be just and reasonable. And any rate that is not just and is declared unlawful. So in this court and both the Supreme Court and this court, I should say, have interpreted that to mean that the act makes unlawful all rates that are not unjust and reasonable and doesn't say that a little bit of unlawfulness is permitted. It really is an all or nothing proposition. If we zoom in on these three specific independence related issues, which one is the most concerning and why? What's your best argument? I'd say they're all concerning, but 7.9, your honor. So this gives them the ability, they would say it's a 10 day delay. There's already a 60 day delay for section 205 to take effect. What are we talking about? Two things. First, it's not about the length of the delay. It's about the fact that transmission owners have the exclusive opportunity to influence and interfere in these proceedings. I think Judge Pan touched on this earlier. It's one day. That's the transmission owners could do it. I mean, so it has to cross some kind of de minimis threshold. Sure. Right. For them to really I think I, I mean, sure, perhaps, but we're not required to make that line drawing exercise here. I think 10 day delay, the fact that there is a broad scope of potential premises in which transmission owners could argue that a filing contravenes, you know, a wide swath of different provisions of the owner's agreement and the fact that they exclusively hold that power. And again, to touch on Judge Pan's point, it's an inapt comparison to say, well, you know, currently I, the members committee gets to veto 205 filings. And so what does it matter if transmission owners get this exclusive opportunity to delay or interfere with those filings? That's an inapt comparison because on one hand, when everyone gets to say, when this is a diffuse voting power, where all the member sectors, all five of these sectors are equally represented, that is not an RTO independence concern. In order 2000 expressly says so. What is an independence concern is when a single class of members gets undue influence or preferential treatment over the other classes. That again is a violation of section 205, which says that all rates and rules shall not be unduly preferential or discriminatory. So because the way this is framed, if you prevail on any one of these amendments, then you win, which do you think is the strongest or the best ground to decide the sign? I know that there's an issue preservation issue, but if we think that that is preserved, which of the menu of options do you think is the strongest? Just in my personal opinion, I would say Mobile Sierra. It does sort of encompass a little bit of everything, all the rejections that come before it as well. But it's clear that, you know, these provisions, they're generally applicable, they're tariff-like, they're unilateral take or leave it provisions for any new member to accept. And they also have the same anti-competitive flavor that this court has previously in cases like Oklahoma Gas in the Second Circuit has said in MISO transmission owners are just not the kind of provisions that we want to afford Mobile Sierra protections to. Is that generally applicable? Is the basic position that Mobile Sierra can't apply to a provision that could apply to anyone who didn't negotiate? Is that the position? It's, I don't believe that it's quite that simple. It has to do with the relative bargaining power of the two parties. It's not just where our position isn't that any generally applicable provision isn't entitled to Mobile Sierra. But in this instance, where the bargaining power of the parties involved would be such that there'd be no way for an individual member to amend this provision to have any sort of individualized negotiation as to it, then that's really a tariff. That is a tariff requirement. It's not an individually negotiated contract. So the simplest argument under Mobile Sierra, however, seems to be that Mobile Sierra is a negotiation between apparently equally bargaining powered parties that that is likely to be a just and reasonable rate because everybody has the incentive to look out for themselves and both sides are represented and it's just and reasonable. And I think the most simple application of that doctrine to this scenario is that this was not an arm's length negotiation between PJM and the process at the expense of the other members by taking it out of the operating agreement where the other members would have a say. Is that the simplest resolution under Mobile Sierra and therefore of this entire case? Personally, yes, I would agree. So, but, you know, that being said, I don't want to let go of this general applicability concept either, especially when you look at the overlap provisions. So they are what that to me is that it relies on this case Wabash, which seems to misquote the Supreme Court case NRG. And so it gives me some discomfort, even though it is good law in this jurisdiction, that gives me some discomfort. Respectfully, I disagree with petitioners position on Wabash misquoting NRG. I think the remand in the Supreme Court's NRG case wouldn't make any sense if it didn't agree that there are these two categories, generally applicable tariff like provisions that are not entitled to Mobile Sierra and these individualized negotiated contract rates that are entitled to Mobile Sierra. If that distinction didn't make any sort of difference as to whether Mobile Sierra ultimately applied, there'd be no need for a remand. The case would have just stopped at NRG. But, you know, as to the point earlier on generally applicable provisions, the overlap provisions, for example, they're nearly identical except for scope as to existing provisions. Attachment M3 in the tariff, I think that's pretty clear evidence that these are generally applicable tariff provisions that aren't the sort that we entitle Mobile Sierra protection to and not individualized negotiated contracts. If the overlap provisions are very similar to existing provisions, that kind of undercuts your arguments as to the overlap provisions because it kind of makes it seem like, well, as to the, not on the Mobile Sierra ground, on the second leg, which is the overlap ones, part of the other side's argument, I think, is look, this is just not doing anything all that different from what's already in place. I think they misperceive the actual rejection the commission made. The commission's rejection wasn't premised on the merits of the overlap provisions. It was entirely based on their location in the CTOA or the owner's agreement rather than in the tariff where the remainder of the local project planning procedures are located. The commission expressly explained that it was not making this rejection on the actual merits or substance of those provisions. Let me ask you a question about the third, because we just talked about overlap, talked about Mobile Sierra, and then there's the kind of independence related stuff. There's a smorgasbord of provisions that are wrapped up in that. Is it your view that if any of those provisions, if the commission's rejection of any of those provisions is good or can't be challenged, that itself is enough? Or do we at least have to think about all of those provisions together so that you have to be right as to all those provisions? The former, your honor. We think of each of these provisions rejected for independence grounds to be their own individual rule. For example, with the exception of, for example, the, well, the overlap provisions are one example where the text between two provisions is technically identical. So, they're really kind of the same thing. So, we group them together. But the 7.9, the RTIP planning provisions, and the RTO status provision, these are three separate provisions that are each independently grounds for affirmance. So, if any of those, if you would get if there wasn't a successful challenges to any of those, that means that the independence grounds fall and then will stand from the commission's perspective, fall from the challenger's perspective, and then the whole thing unravels. Correct. Right. If the challenge that petitioners make fails to any one of them, then the entire thing collapses. Yes. My colleagues don't have additional questions for you. Thank you. Thank you, Ms. Gell. Thank you. Good morning, and may I please the court. I'd like to address three issues that we've already had some discussion about. First is standing. Respondent interveners do take the position that the transmission owners have not established standing because, as we've already discussed, they failed to specifically seek rehearing of FERC's finding on the planning provisions. And going back to one of the last lines of inquiry, we do agree that FERC made specific findings as to each of the separate provisions. If you look at, for instance, paragraph 47 in the initial order of JA21, there FERC specifically said with respect to the planning provisions that they would interfere with PJM's planning authority. So, that was a distinct basis for finding that the planning provisions were unjust and unreasonable. If you look at the transmission owners' request for rehearing, they didn't specifically seek rehearing of FERC's finding as the planning provisions specifically. Significantly, they... Does it have to be that specific? Because there were general challenges to all of the amendments. Nothing in the plain language of the provisions of the CTOA amendments cited support in any way endanger independence or change the current relationship. I mean, it just seems like they definitely challenged all of them in a general sense, and I'm wondering why it has to be so specific. Well, that's certainly their argument, Your Honor. They argued that basically their general RTO independence objection or objections to FERC's reliance on RTO independence encompassed all their objections to the particular provisions. But the rehearing requirement in the federal power in Section 313 of the Federal Power Act does not allow for indirect or implicit preservation of objections. And we would argue that FERC made a specific finding as to the planning provisions specifically that they interfered with... They would interfere with PJM's independent planning authority if they were to be approved, and that's the... But there are specific arguments that the amendments don't interfere with independence, and there is a specific site to RTEP where they say actually that enhances... They argue that that enhances independence. Yeah, that is their argument, Your Honor. And I guess, going back to some of the earlier discussion, if... Well, that is their argument, that it's encompassed. Our position is that that's an implicit or indirect attempt to preserve a specific finding by the commission. And I also wonder why is it that this needs to be framed in terms of standing? Because if it wasn't raised before the commission, we just don't have jurisdiction. We don't have to call it standing, do we? Well, the argument is because that issue is not before the court... This goes back to the fact that the transmission owners presented this as a package, an integrated package, and they didn't consent to any approval without any particular provision. So if that provision is not before this court... No, I understand that. I just think that that's a really complicated analysis, whereas it seems like there's a simple one, which is if you didn't raise it before the commission, we don't have jurisdiction to hear it, you lose, and then the whole house of cards falls. We agree that if you could also address it as a lack of preservation, lack of jurisdiction argument, and because of that one provision, it's not before the court, so to your point, your honor, the whole house of cards falls. We do think there is a standing issue, but it could also be framed as a lack of jurisdiction for failure to preserve the issue on rehearing, and then as you know, in our view, and as FERC found, the whole house of cards would fall. I don't know that that's a simpler way to resolve this case, because then we have to figure out a lot of things about preservation, etc. When we have this whole menu of options, like which is the most straightforward way to look at it? Which one of these is the most straightforward way to affirm? It doesn't sound like this is the most straightforward way. Well, your honor, I would agree with FERC counsel. We think the Mobile Sierra issue is probably the... We disagree on the independence, and I do want to address counsel's discussion of this balancing test that they're suggesting, but we do think that they haven't established that this is a Mobile Sierra contract. It will apply to future transmission owners without any opportunity to negotiate different terms and conditions, and more broadly, to your earlier question, Judge Pan, it was supposed to be... This court has said that in order for Mobile Sierra to apply, you have to have sophisticated parties in adversarial negotiations pursuing independent interests. Here, PJM and the transmission owners were not pursuing independent interests insofar as the planning protocol from the operating agreement to the tariff. That also, as we argue in our brief, this also highlights a broader concern with trying to apply Mobile Sierra to the operating agreement. Even if PJM and the transmission owners are, in some sense, in an arm's length negotiation on the issues that apply to them, the operating agreement has broad ramifications for all other stakeholders. And I would urge the court to be very careful about extending Mobile Sierra to this kind of contract, because Mobile Sierra... This court has said it's not even clearly established that Mobile Sierra applies outside of the context of rates. This is a far cry from an ordinary rate contract. But in Oklahoma Gas, we did apply it outside the context of rates. Yeah, yes. You didn't reach the... You didn't reach that issue. We didn't reach, but we assumed that we could. Yes, yes, your honor. You noted that it hadn't been clearly established. Yes, your honor. But so... There's also a threshold issue with Mobile Sierra, which is that there's an assumption that contracting parties can put into their contract, you know, basically that this legal doctrine should apply to their situation. And I just don't think that that is even appropriate, because it's completely non-binding. Like, the parties saying that Mobile Sierra will apply would not bind a court or another reviewing body. We would have to independently look at that, at those factors. You can't just contract and say that we are at arm's length here, and therefore Mobile Sierra will apply. You can't do that. Yeah. I find that a complicating factor on Mobile Sierra as well. Yes, your honor. And, you know, that's one of the reasons we're here, because parties disagreed that, indeed, they could just stick that into the contract and bind all parties. Let me make sure my... I think your time is out, but let me just make sure my colleagues don't have additional questions for you this time. Okay. Thank you. Thank you. Your launch will give you three minutes for rebuttal. Okay. Thanks very much, and a lot that we've done. There's a lot to deal with, so I'll try to take it in order, but I think the first point I'll make goes a little bit to what Judge Garcia was talking about, and when Berk Council mentioned, you know, we're talking about violation of a regulation here. I just want to make clear on that. This is one of the concerns we have with this. The regulation just says PJM should be independent. The regulation doesn't say anything about dispute resolution, one day, ten days, it doesn't say anything about any of the specific reasons, just has this general notion that PJM should be independent. One of the things that would really concern us here would be a ruling that FERC would have the right to take any de minimis view of independence one day, and then basically start rewriting our contract on this kind of amorphous notion of a, of independence. So I fully agree with Judge Garcia. There has to be some substantial finding of that the independence is being, that independence is being infringed on for you to get into that, because otherwise you're just basically giving FERC the right to rewrite our contract, and we don't think that's really appropriate or where it's headed. There has to be some substantial finding, and the finding here they keep coming back to is that, well, we're the only party that can invoke these dispute resolution provisions. We are the only party with a contract. These are our assets. This is what makes this whole thing possible. It's just not realistic to say that an effort to protect a contract that makes us, that makes this all possible somehow is an illicit act on our part to try to exercise control. It's just an effort to try to protect our contractual rights for our assets that make this all possible. On Mobile Sierra, I agree with Judge Pan. We cannot say in our agreement that Mobile Sierra applies. That's not what we did. What we just said is it is the view of the parties that this was, and it's a view of the parties that this was a bilaterally negotiated agreement to which Mobile Sierra should apply. That's a decision for FERC to make. That's a decision for the court to make, but we're saying from our experience, and that's what I said, these were from our experience, bilateral negotiations, real bilateral negotiations between adverse parties. That was what we stated in there. We believe the conditions for Mobile Sierra should apply. FERC said, well, we disagree. To some extent, maybe that's an advisory opinion before you have a dispute that turns on whether Mobile Sierra applies or doesn't apply. In any event, we were not trying to say we can give ourselves this protection. We're just saying we believe that the conditions for Mobile Sierra apply. Obviously, it's up to agency or court to determine whether that's the case. If it's completely non-binding and advisory, how could it be a basis to reject the package? I have to say I'm a little bit of a two minds on Mobile Sierra. To me, I think all we said was the parties believe that Mobile Sierra applies to this. When it comes to a dispute on Mobile Sierra, that's going to be our position. I guess FERC has said what their position is. I agree with that view. I think FERC's opinion on this was more or less advisory because they don't really have a dispute in front of them on this. All we've said is we think it applies. FERC has said they don't think it applies. If there's ever a dispute, we'll decide who's right, I guess. I don't know when the next one's going to be. Did you hear an application for in your opening brief that the FERC's disagreement with this Mobile Sierra provision is not a basis to reject the package? I didn't see that. It sounded like a gotcha. I didn't think that was one of the arguments. Yeah. We didn't argue that specifically. I guess what I'm bringing it up now is I don't think I would very strongly disagree with the suggestion of the intervener that if you're looking for the low hanging fruit here, Mobile Sierra is the low hanging fruit. I think Mobile Sierra is the highest hanging fruit here. First of all, this is an issue that's been around for a while. It hasn't really been squarely decided. FERC has this view. A lot of people on our side disagree with this view. I think this would not be a particularly good case to decide Mobile Sierra on that. You don't even think it's approved, no matter what level. That's really my view at this point. I'm thinking a little bit out loud here, but it's always been my sense on Mobile Sierra, which is that our position is if a dispute arises under the agreement, we believe that Mobile Sierra would apply, but there's no dispute right now on that too. I know FERC wanted to set out its position. They disagree. They made very clear that they disagree on this. I'm just not really sure that that issue is teed up. I don't think I would put it in terms of a reason to reject the agreement, but I do think probably the right thing would say for FERC to say, look, we understand, we disagree, but that's it. Then in terms of the you know, obviously there's always a little bit of a sense when you're the lawyer, you never want to be found to have waived because your professional standing is something so that goes. I don't believe we waived, and I think the clearest on that is that the specific provision that they talked about was they said, look, the RTEF planning provisions and together as a whole violate independence because they put the agreement over the regulation. FERC treated those together. They didn't even cite the specific provisions they now say we waived. They treat it all together as this provision. You can look at paragraph 47J21 on that, and so we treat it together. We did address 635, but we did address the argument that no, not violating PJM's independence by putting the agreement over the regulation. All we're trying to do is say, but the agreement does exist. The agreement can't be ignored. That's all we're saying. Yeah, that one paragraph, it says this provision in one sentence and these provisions in the next sentence. Yeah, it's pretty confusing, and look, I'm sorry. I don't want to be facetious about it. All I'm saying is if you find waiver, please find that it was reasonable for us to have waived. That's all I'm saying because it was a little confusing. It was a little confusing the way they put it, and I think that's kind of it to the extent that we didn't cite all of those specific provisions in great detail in the rehearing brief. I think that's why. Let me make sure my colleagues don't additional questions. All right. Thank you very much. Thank you. Thank you to all council. We'll take this case under submission.
judges: Srinivasan; Pan; Garcia